# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ERIC E. BELL, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-0456-CV-W-HFS-P |
| | ) |
| KANSAS CITY POLICE DEPT. et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING SUMMARY JUDGMENT

This is a 42 U.S.C. § 1983 civil rights matter. Plaintiff's claims relate to events which occurred during his arrest on June 24, 2007. The remaining defendants are Kansas City Police Officers Eric Stucker, Aaron Bryant, and Dain Apple.

Plaintiff alleges that excessive force was used when, after plaintiff led the police on a car chase, the defendant police officers used a Taser on plaintiff in an attempt to remove him from his vehicle. In his complaint, plaintiff contends that he was complying with the police officers' orders at the time he was tased. He claims that as a result of defendants' actions, he was transported to a hospital where he was treated for heart-related symptoms (Doc. No. 5).

Pending before the court is defendants' motion for summary judgment and suggestions in support thereof (Doc. No. 148). Plaintiff has filed two responses thereto (Doc. Nos. 153 & 154), defendants have filed reply suggestions (Doc. No. 160), and plaintiff has filed a sur-reply (Doc. No. 161). Defendants claim that summary judgment is appropriate and that they are entitled to qualified immunity.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a moving party is entitled to summary judgment on a claim

only if he has made a showing that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). In applying this standard, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). "The inquiry performed is . . . [whether] . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A party opposing a motion for summary judgment, however, "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against [him]." Fed. R. Civ. P. 56(e).

## OFFICER STUCKER

The record reflects that Officer Stucker was not present at Truman and Benton when plaintiff was arrested. While pursing plaintiff in his police vehicle, Officer Stucker ran over "stop sticks," that were intended to shred the tires on plaintiff's vehicle. Officer Stucker's vehicle broke down on the highway, and he did not arrive at the scene of plaintiff's arrest until after plaintiff had been removed. (Doc. No. 148, 11). Consequently, defendant Stucker is entitled to summary judgment on plaintiff's excessive force claim.

## FOURTH AMENDMENT - EXCESSIVE FORCE

The use of excessive or deadly force by police during the course of an arrest may violate the Fourth Amendment's prohibition against unreasonable searches and seizures. See Graham v. Connor,

490 U.S. 386, 394-395 (1989). In reviewing a claim of excessive force during an arrest, the Court must consider the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The Court also must consider the extent of injury. Edwards v. Giles, 51 F.3d 155, 157 (8th Cir. 1995).

"[T]he 'reasonableness' inquiry in an excessive force case is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," and the "reasonableness" of the action "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396-397.

The record reflects that the police received a call that plaintiff had run over a child's bicycle in the front yard of a house. Defendant Apple responded to the scene and saw plaintiff drive his vehicle down a residential street at 70 miles per hour and side-swipe a police car. (Doc. No. 148-2, 2). The victim told police that plaintiff was "wanted." Officers pursing plaintiff learned over the radio that plaintiff had multiple warrants for his arrest, including a felony warrant. Officers attempted to pull plaintiff over, and were led on a 40-45 minute bi-state chase. The chase ended after plaintiff's vehicle ran over stop sticks placed by the police. Plaintiff's vehicle came to a stop near Truman and Benton (Doc. Nos. 148, 148-1).

Police officers approached plaintiff's vehicle. According to defendants, plaintiff did not comply with the command to "show his hands" or to "get out of the car." Defendants state that plaintiff kept looking ahead and at the truck's mirrors, and that his hands were not visible. (Doc. No. 148, 4). Plaintiff contends that he was following police orders, but does not describe how he complied

-3-

with them. (Doc. No. 5, 4).

In an attempt to remove plaintiff from the vehicle, Officer Apple deployed his Taser while Officer Bryant provided back-up with his gun. The Taser prongs hit plaintiff on his left side. Defendants contend that plaintiff still did not comply with police orders, so Officer Apple activated the Taser a second time. (Doc. No. 148, 4). After plaintiff was removed from his truck, an ambulance was called and plaintiff was transported to St. Luke's Hospital where he complained of chest pain. (Doc. No. 148, 5). Plaintiff was given routine tests and was released the next day. (Doc. No. 148).

Applying the applicable legal standard to the facts of this case, and viewing the evidence in the light most favorable to plaintiff, the Court concludes that defendants' actions were "reasonable" in using a Taser to remove plaintiff from his vehicle after plaintiff attempted to "evade arrest by flight." Defendants' belief that plaintiff was dangerous was reasonable in light of the circumstances.

Under current law, taser use is permissible, but only when reasonable under limited circumstances. Mattos v. Agarano, 590 F.3d 1082 (9th Cir. 2010). See, e.g., Lewis v. Downey, 581 F.3d 467 (7th Cir. 2009) (qualified immunity denied when taser used against an inmate). In the Eighth Circuit, tasering a passenger in a traffic arrest justified a denial of summary judgment when it was the drive who had been "fleeing from an officer" in a motor vehicle. Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009). In an opinion by Judge Rosenbaum, summary judgment was granted to an officer who used a taser to force a plaintiff to release his grip from a basketball pole while resisting arrest. Schumacher v. Halverson, 467 F.Supp.2d 939 (D. Minn. 2006). This is a close case, but I conclude that the plaintiff, having engaged in flight, cannot rest on his current contention that he was about to surrender when tasered.[1] The defendant could reasonably conclude that the

---

[1] Unconstitutional use of tasering in anger, or to punish, is too speculative to submit in the context of this case.

-4-

strong medicine of tasering was justified, in the absence of distinct indicia of compliance with his orders; even if I am mistaken, there is not enough law warning defendant against tasering to justify this litigation. The claim of qualified immunity is sound.

## **QUALIFIED IMMUNITY**

Defendants also maintain that they are entitled to qualified immunity. (Doc. No. 23, 23). Government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate a clearly established statutory or constitutional right which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "To be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Doby v. Hickerson, 120 F.3d 111, 113 (8th Cir. 1997) (quoting Anderson v. Creighton 483 U.S. 635, 640 (1987)).

The Court uses a two pronged test in order to determine if a government official is entitled to qualified immunity. See Weiler v. Purkett, 137 F.3d 1047, 1050 (8th Cir. 1998). The first prong of this test is to determine whether or not the plaintiff has alleged a deprivation of a constitutional right. Id. The second prong of this test is to determine if that constitutional right "was so clearly established that a reasonable public official would have known his or her conduct violated the Constitution at the time of the act." Id.

Applying the qualified immunity test to plaintiff's claims, defendants are entitled to qualified immunity because plaintiff's claims fail the second prong of the test. Although plaintiff is alleging that his constitutional rights were violated, his claims do not rise to the level of constitutional violation.

## **SUMMARY**

Defendants have shown with sufficient clarity that summary judgment should be granted in

their favor. After reviewing the evidence in the light most favorable to plaintiff and after giving him the benefit of all reasonable inferences, the Court concludes that there is no genuine issue of material fact as to plaintiff's claims against defendants and that defendants' motion for summary judgment should be granted.

Plaintiff is cautioned that, in addition to the $350.00 filing fee, federal law now "'makes prisoners responsible for [appellate filing fees of $455.00] the moment the prisoner . . . files an appeal.'" Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (citation omitted). Pursuant to Henderson, plaintiff is notified as follows:

> (a) the filing of a notice of appeal by the prisoner makes the prisoner liable for payment to the full $[455] appellate filing fees regardless of the outcome of the appeal; (b) by filing a notice of appeal the prisoner consents to the deduction of the initial partial filing fee and the remaining installments from the prisoner's prison account by prison officials; (c) the prisoner must submit to the clerk of the district court a certified copy of the prisoner's prison account for the last six months within 30 days of filing the notice of appeal; and (d) failure to file the prison account information will result in the assessment of an initial appellate partial fee of $35 or such other amount that is reasonable, based on whatever information the court has about the prisoner's finances.

Id. at 484.

Accordingly, it is **ORDERED** that defendants' motion for summary judgment (Doc. No. 148) is granted, and this case is dismissed with prejudice.

    /s/Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: March 22, 2010.